MICHAEL ROSEN
Law Offices
61 Broadway, Suite 2602
New York, New York  10006
mrosenlaw@aol.com

CELL (516) 381-6690                                                                          FAX (212) 248-4068
TEL   (212) 742-1717

February 26, 2012


Hon. John Gleeson
United States District Judge
United States Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201

                Re:    United States v. Glenn Mazzella
                     11-CR-0026 (JG)

Dear Judge Gleeson:

I represent Mr. Mazzella who, on February 3, 2012, Your Honor sentenced to, among other things, five years Probation--including six months home confinement and electronic monitoring--and a $40,000 fine. The Probation Department has advised that the electronic bracelet, home hookup and starting point is scheduled for **this Wednesday, February 29, 2012**, thus, the immediacy of this request.

On Friday, February 24, 2012, Mr. Mazzella met with his assigned Probation Officer John Danielo, and together they reviewed Mr. Mazzella's daily duties, responsibilities and routine as the single parent that he is, as well as the family's sole financial support. Mr. Danielo advised Mr. Mazzella that the most workable and practical format in dealing with such a situation as presented was to secure an Order of the Court authorizing the imposition of a curfew that would include and encompass Mr. Mazzella's obligations and responsibilities to the health, education and welfare of his sons as well as to his need to earn income. USPO Danielo told Mr. Mazzella that he would have no objection to an application to Your Honor for the implementation and imposition of a daily curfew for Mr. Mazzella. After reviewing all the documentation presented to Your Honor prior to sentencing, I submit that a 6:30AM-10:30PM curfew would be appropriate. Mr. Mazzella provided me with a memorandum, which he also sent to USPO Danielo, detailing recent, present and future commitments, events and activities involving his sons which provide snapshots of his responsibilities.  I transmit the memorandum herewith,

Additionally, Mr. Mazzella advised USPO Danielo that he is unable to presently pay the $40,000 fine. USPO Danielo stated that he would consider instituting a workable payment plan upon Your Honor's

Page-2-
Re:   United States v. Glenn Mazzella
      11-CR-0026 (JG)


authorization, approval and direction and, again, stated that he would have no objection to such an application. In Mr. Mazzella's appended memorandum, he articulates his present economic difficulties and, as noted therein, has provided USPO Danielo with documentation with respect thereto.

Judge Gleeson, I recognize that Mr. Mazzella's sons were the focus and intended beneficiaries of the "heart" you referred to during the sentencing and, I represent to you, there is sincere gratitude and appreciation for your ultimate sentence. I respectfully request the additional components of a curfew and payment plan to implement that focus.  AUSA Stephen Frank has not responded to my recent e-mail asking for the government's position on this application.

                                        Respectfully submitted,


                                        Michael Rosen

MR:wp

Dear Mike,

On Friday 2/24/12 I met and interviewed with my Probation Officer John Danielo. Officer Danielo took me through the entire process and what I can expect for the 6 months of home confinement ordered by Judge Gleeson. Of course I brought tremendous documentation related to all of the daily responsibilities, activities, etc. that I handle on a daily basis for the children. Officer Danielo explained that sometimes the sentencing orders that come from a judge are specific with conditions and sometimes not. My judgement, according to him did not indicate the specifics regarding the need for me to be able to take care of the boys in all ways needed. Judge Gleeson however, did say at sentencing that I would be able to work and take care of everything needed for the boys. You expressed concern about other clients that "weren't allowed to take out the trash". Judge Gleeson said "You're a good attorney Mr. Rosen, if probation deems the arrangement is not feasible, I'm sure I'll hear back from you."

With all of that said Mike, and at the direction of PO Danielo I am preparing an extremely detailed list and outline of not only what is typical day to day but what I know is scheduled between now and the end of August and many examples of things that are virtually impossible to pinpoint and incorporate into a schedule. An example of that is if one of the boys calls and says Dad instead of taking the bus home from school can I go to my friend's house and play video games and stay for dinner? According to PO Danielo, I can't leave the house except for church, doctor's appointments and a work schedule. The above example is obviously only one of literally hundreds of scenarios. Mike, I do not and am not asking for sympathy for myself. I don't think it was Judge Gleeson's intent to interrupt the continuum or stability of the children's lives especially as it relates to school activities and their well-being.

The following represents many of the various responsibilities and places I have taken my children from February 3, my sentencing date until the present:

1. On weekdays I typically drive boys to school at 7:00am at least three days per week. The other two days they take the bus, it comes at 6:15am.

2. In the last two weeks Michael needed to go to the doctor to get a physical.

3. Jonathan had basketball practice (CYO), three times — 7:00pm and twice at 8:00pm. He had one game at 8:00pm.

4. Michael went to his SAT prep course twice (every Tuesday night for 4 weeks). 6:30-9:00pm.

5. Michael went to two church youth group meetings 7:30-9:00pm, they are

weekly. They are also Tuesday nights so he will miss four in a row for the SAT prep.

6. Michael went to the batting cage for baseball practice twice after school.

7. I brought Michael to baseball clinic (5 week program).

8. Jonathan went to a friend's house after school, Michael and I picked him up at 7:00pm and went to pizzeria for dinner.

9. I took Jonathan to the video game store.

10. I took both boys for a haircut.

11. We went grocery shopping.

12. I took Michael to his counselor (bereavement/therapist).

13. I took Michael to his tutoring session.

14. I took Jonathan to the dentist for his cleaning.

15. I went to Home Depot to buy a light fixture to replace one that broke.

16. I picked Jonathan up from school, he stayed for extra help.

17. I took the boys to a movie.

I realize that some of these things seem mundane but again, every one of them (and many more like them) happened between February 3 and February 24. Again, Officer Danielo was clear that the directive he has from Judge would require me to call in to his office 24 hours in advance in order to get permission to go to a doctor appointment. Where does that leave the rest of these responsibilities and activities? If needed I would be more than happy to provide any type of support documents, addresses, names etc. for all of these types of activities.

The following represents an example of the things that I anticipate are coming up over the next 6 months related to the children and my responsibilities for them.

1. March 1 – Michael has mapping for his implant, our appointment is in Manhattan at 3:00pm.

2. Soon both boys will need follow up visit at optometrist.

3. Michael sees therapist every Saturday.

4. Jonathan has basketball practice and games for the next month and a half. Days and times are emailed to us (usually night before) from coach.

5. Michael starts intramural baseball practice Monday, February 27. It starts after school and usually goes until approximately 6:00pm.

6. We attend church as a family on Sundays. There are other services depending on time of year that we generally attend (Thanksgiving Eve, Holy Thursday, Good Friday).

7. Michael continues SAT prep Tuesday nights.(there are 2 weeks left)

8. Michael will resume church youth group meetings.

9. Baseball season will start in March. Schedule has not been released yet. Games are after school, and sometimes obviously road games. Can I go to them with Jonathan?

10. Sometimes our bereavement group invites us to activities and retreats. Some have been overnight, we did one in Montauk last year with four other families in the bereavement group. May I attend one of these with children?

11. I usually have approximately two appointments at the school with various teachers(CSE,IEP)to discuss children's progress.

12. Soon Michael and I will have to visit potential colleges. All applications have to be in before thanksgiving. I would assume I could work this out with Officer Danielo.

The following represents projections on what I think is typical weekly and monthly as it relates to a typical life for two teenagers. Given that both boys are deaf, I wish to reemphasize that my involvement is even greater than the typical parent. This especially since their equipment malfunctions quite often rendering them completely deaf.

1. The boys get earaches, colds, fevers. Who knows what time of day or night this happens. How do I call 24 hours in advance and speak with live person to gain permission?

2. Hearing aids malfunction and immediate appointments are needed at audiologist.

3. Kids make daily requests, (ie: "Can we go over friend's house after school? Can we go to movies? Can I join the travel team for basketball? Dad can you take me bowling?") How do I plan and submit a schedule for these things in advance?

4. Summertime – Do I take kids to the beach, driving range, pool? Are they allowed to stay out later with friends because there's no school in the summer? How do I go pick them up?

5. Both boys attend multiple youth group activities. All of these require meetings, fundraising and transportation all happening at different times of day and night.

The following is an explanation of my work responsibilities:

Certa-Cote

   When we are in contract the jobs are generally in the New York 5 borough area and also in Westchester. We provide pipe coating for utility companies like Con Edison. The only time I would have to go to a job site spontaneously is if there were a work related emergency or injury which does happen from time to time.


PreAll Boats

We are a retail boat brokerage sales office located in Merrick New York. All sales are done exactly like real estate by appointment and are at the customer's convenience. It's impossible to predict when customers will respond to the ads and want to make appointments.

Responsibilities for the children are paramount. I need some flexibility with the work schedule. Many times I can take the boys with me on an emergency calls.


Again, I went through all of the things outlined here in detail with Officer Danielo and the result of that conversation is that I am respectfully asking for a home confinement sentence with a curfew so that I can continue to take care of my children in every way they deserve and of course go to work and not miss potential income opportunities. I could easily accomplish this on a daily basis between 6:30am-10:30pm. The only exception is if one of the kids sports games or church groups runs a little later but it doesn't happen very often and I could always talk to my officer if that were the case. Officer Danielo advised that he has no objection to home confinement with curfew.

In 2010 Certa-Cote had a very good year and performed 11 months worth of utility contracts. Since my arrest we have worked less than 40 days. The media attention has all but crippled my reputation. The boat business is worse. I'm doing everything I can to maintain a normal and stable environment for the boys. I do not have $40,000. I've provided Officer Danielo full financial disclosure, five years of tax returns and copies of every bank account I have for personal and business. I have one liquid account left, a union annuity with $23,000 in it. I'm going to break it and absorb a 20% penalty. I will pay the three months mortgage arrears and use the balance of the money (approximately $10,000) as a down payment on the fine, if Judge Gleeson will allow me. I can then make monthly payments. Officer Danielo has indicated that he has no objection to a payment plan.


Thank you,
Glenn Mazzella